Ronald R. NAGY, Plaintiff,

v.

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.

Court No. 81–4–00427.

United States Court of International Trade.

Sept. 16, 1983.

Ronald R. Nagy, pro se.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., Sheila N. Ziff, New York City, for defendant.

RE, Chief Judge:

Plaintiff challenges the Secretary of Labor's denial of certification of eligibility for trade adjustment assistance benefits for the former employees of Detail Production Company, Ferndale, Michigan. Specifically, the Secretary of Labor found that plaintiff and his fellow workers were service workers employed by a firm that did not produce an article within the meaning of section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3) (1976). Hence, they were deemed ineligible for trade adjustment assistance benefits.

After reviewing the administrative record and the arguments of the parties, the court finds the Secretary's denial of certification supported by substantial evidence and in accordance with law.

On May 14, 1980, plaintiff, on behalf of himself and two other former employees of Detail Production Company (Detail), filed a petition with the Secretary of Labor (Secretary) for certification of eligibility for trade adjustment assistance benefits. Pursuant to section 221(a) of the Act, 19 U.S.C. § 2271(a) (1976) and 29 C.F.R. § 90.12 (1980), the Secretary published a notice of receipt of plaintiff's petition and the initiation of an investigation. 45 Fed.Reg. 40257 (1980).

Section 222 provides that the Secretary of Labor shall certify a petitioning group of workers as eligible for trade adjustment assistance benefits if he determines:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with *articles produced* by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production. [Emphasis added.]

Plaintiff's petition was denied because it failed to satisfy the third eligibility criterion, *i.e.,* plaintiff's employer, Detail, did not produce an article that was adversely affected by increased imports.

Plaintiff claims that the work performed by the employees at Detail is "automotive related," and thus, the workers were part of the production process for new cars and trucks. Since their separation from employment allegedly was due to an increase in the importation of motor vehicles, plaintiff submits that Detail's employees are entitled to be certified as eligible for worker adjustment assistance benefits.

The Secretary's investigation disclosed that plaintiff's work activity at Detail consisted of splining blank four-wheel drive hubs provided by the Budd Company (Budd) which were returned to Budd for assembly into brake units for automobiles. Splining is a machine operation that cuts grooves or channels into the hub of a motor vehicle.

In denying certification of eligibility, the Secretary determined that the splining of hubs was a service and thus did not constitute the production of an article, as required by section 222 of the Trade Act of 1974. 46 Fed.Reg. 14495, 14496 (1981). Nevertheless, the Secretary stated that the

workers at Detail could be certified if their separation from employment was caused importantly by a reduced demand for their services from a parent firm, *i.e.*, one which owned or otherwise substantially controlled Detail. In that event, the reduced demand for services must emanate from a production facility of the parent firm whose workers independently met the statutory criteria for certification. Furthermore, the reduction must relate directly to the product adversely affected by increased imports. The investigation disclosed that these conditions were not present for the petitioning workers. Thus, the Secretary concluded that they were not certifiable for eligibility for trade adjustment assistance benefits.

Thereafter, pursuant to section 284(a) of the Trade Act of 1974, 19 U.S.C. § 2395(a) (Supp. IV 1980), plaintiff commenced this action, by letter complaint, seeking judicial review of the Secretary's denial of certification.

On May 19, 1983, pursuant to Rule 56.1, the court, *sua sponte,* ordered that this action be deemed submitted on July 18, 1983 for review of the Secretary of Labor's determination upon the administrative record, and that the parties submit briefs addressing the relevant issues including:

(1) Whether the plaintiff's employing firm was a firm that produced an import-impacted article within the meaning of section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3) (1976); and

(2) Whether the Secretary's findings and resultant determination denying plaintiff's certification of eligibility for trade adjustment assistance pursuant to section 223 of the Trade Act of 1974, 19 U.S.C. § 2273 (1976), are supported by substantial evidence contained in the certified administrative record filed with the court.

■ The purpose of judicial review of a decision by the Secretary of Labor denying a petition for certification of eligibility for trade adjustment assistance benefits is to assure that the Secretary's determination is supported by substantial evidence contained in the administrative record and is in accordance with law. 19 U.S.C. § 2395(b) (Supp. IV 1980). The ownership of Detail Production Company, and the nature of the work performed there, are not in dispute. The question presented, therefore, is whether, in finding that plaintiff was not eligible for benefits because the employing firm did not produce an import-impacted article, the Secretary of Labor correctly interpreted and applied section 222(3) of the Trade Act of 1974.

■ A review of the administrative record reveals that the Secretary could not certify the workers at Detail as eligible for trade adjustment assistance benefits based on plaintiff's claim that they produced an import-impacted article. The article in question, a hub, is a component of a motor vehicle brake system, and thus, could not be considered directly competitive with the import-impacted finished article, a four-wheel drive motor vehicle. *See United Shoe Workers, AFL–CIO v. Bedell,* 506 F.2d 174 (D.C.Cir.1974); *Machine Printers and Engravers Association v. Marshall,* 595 F.2d 860 (D.C.Cir.1979); *Morristown Magnavox Former Employees v. Marshall,* 671 F.2d 194 (6th Cir.1982); and *Gropper v. Donovan,* 6 CIT ——, 569 F.Supp. 883 (1983).

Rather, the Secretary focused his investigation on plaintiff's claim that the employees at Detail should be certified as eligible for benefits because their work was "automotive related," *i.e.,* they performed tasks ancillary to the production of a finished article, a four-wheel drive vehicle.

The Secretary maintains that plaintiff and his fellow workers performed a service, and that the performance of a service does not constitute production of an article under section 222 of the Trade Act of 1974. The Secretary further contends that the reduction in demand for services must originate at a production facility whose workers independently meet the statutory criteria for certification, and the reduction must directly relate to the product adversely impacted by imports.

Prior cases have examined the question of whether services are "articles," within the meaning of the worker adjustment assistance eligibility requirement of section 222(3). *Fortin v. Marshall,* 608 F.2d 525 (1st Cir.1979); *Pemberton v. Marshall,* 639 F.2d 798 (D.C.Cir.1981); *Woodrum v. Donovan,* 5 CIT ——, 564 F.Supp. 826 (1983); and *Miller v. Donovan,* 5 CIT ——, 568 F.Supp. 760 (1983).

In *Fortin,* former employees of an airline who performed a variety of passenger, cargo, mechanical, administrative and managerial tasks appealed the denial of their petition for certification of eligibility for trade adjustment assistance benefits. The court held that services were not "articles" as that term is used in section 222, and affirmed the Secretary's finding. The court, in interpreting the words of the statute, stated that "[w]hen read in the context of the entire Trade Act, * * * it becomes clear that the term 'article' was plainly meant to refer to a tangible thing and not to a service." *Fortin,* at 527. Thus, the court concluded that "[t]o interpret air transportation services as 'articles produced' within the meaning of 19 U.S.C. § 2272(3) is to strain severely, if not fracture, the statutory language." *Id.*

In *Pemberton,* the Court of Appeals affirmed the Secretary's decision that workers at a shipyard, whose work involved mainly repair and maintenance of marine vessels, were not involved in the creation of articles for purposes of the Trade Act of 1974 and, thus, were not eligible for trade adjustment assistance. The court in *Pemberton* made the following pertinent observation:

> The repair and maintenance of a ship is clearly a service to an existing commodity. Even if the repair necessitates the use of new materials, it cannot be said to be the creation of a new ship any more than overhauling an automobile can be said to be manufacturing a car. * * *
>
> *Fortin* * * * leaves no doubt that services do not fall within the terms of § 2272. * * * Appellants contend that *Fortin* is distinguishable because in that

case nothing tangible was produced. In our situation, the service did involve a tangible item—a ship—but the *same* item was also the end product. There was no transformation, but a mere refurbishing of what already existed. [Emphasis in original.] [Footnote omitted.]

*Pemberton,* at 800.

■ These cases clearly demonstrate that the term "article," as used in section 222(3) of the Trade Act of 1974, does not embrace activity by a worker that does not result in the creation or manufacture of a tangible commodity, or that does not cause the transformation of an existing product into a new and different article.

■ There is no doubt that plaintiff's work, *i.e.,* splining, was performed on a tangible article. Nevertheless, plaintiff did not create or manufacture a tangible commodity, or transform it into a new and different article. The hub was clearly the beginning and the end product. Plaintiff and his co-workers merely serviced an already completed article, a hub, which was returned to the supplier, Budd, for assembly into brake units for four-wheel motor vehicles.

In two recent cases this court examined the question whether workers engaged in servicing automobiles were employed by a firm that produced an "article" within the meaning of section 222(3) of the Trade Act of 1974.

In *Woodrum,* plaintiffs, on behalf of the former employees of an automobile dealership, challenged a denial of certification of eligibility for benefits under the worker adjustment assistance program. The Secretary denied certification for plaintiffs because they were employed by a firm that did not produce an article that was adversely affected by increased imports. Plaintiffs contended that neither *Fortin* nor *Pemberton* were applicable to their respective situations because, unlike them, the workers in those cases were not part of the production process. Plaintiffs further contended that, regardless of the nature of their work, the court should consider them as part of the

production process for new automobiles because their labor was essential to the final delivery of those automobiles to the general public.

In rejecting plaintiffs' contentions, this court said:

> * * * It is clear that production under section 222(3) requires the manufacture or creation of something tangible. The *Pemberton* test is whether the workers in question transformed articles into new and different articles.
>
> It is difficult to quarrel with the reasoning of *Pemberton* for it cannot be questioned that "produce" means to give birth, create or bring into existence.
>
> There is no doubt that plaintiffs' work was performed on tangible articles, Chrysler cars. By their own admission, however, plaintiffs did not manufacture new articles. Rather, their work consisted of adjustments and preparation of the tangible article which was also the end product. As in *Pemberton,* plaintiffs Woodrum, Johnson and Dorsey merely made repairs and serviced already completed articles. There is no evidence which indicates that plaintiffs made substantial changes to the new Chrysler cars resulting in their transformation into a new end product. * * *

*Woodrum,* 564 F.Supp. at 831–832.

Similarly, in *Miller,* this court affirmed the Secretary's determination that employees, whose work consisted solely of selling and servicing completed articles, *i.e.,* cars and trucks, were ineligible for trade adjustment assistance benefits inasmuch as they, too, were service workers who did not produce an import-impacted article.

From the foregoing, it is clear that plaintiff was not employed by a firm that produced an import-impacted article within the meaning of section 222(3) of the Trade Act of 1974. The record before the court fails to disclose any evidence that plaintiff performed any work that created or manufactured a tangible commodity, or that transformed an existing product into a new and different article.

Accordingly, it is the conclusion of the court that the Secretary of Labor's denial of certification is supported by substantial evidence and in accordance with law. The Secretary's determination is therefore affirmed.