**Slip-Op. 05-91**

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN

|  |  |  |
|---|---|---|
| **FORMER EMPLOYEES OF MERRILL CORPORATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Court No. 03-00662** |
| | : | |
| **UNITED STATES,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

[Plaintiffs' Motion for Judgment Upon the Agency Record is DENIED. The Department of Labor's negative determination is REMANDED for further investigation.]

Dated: July 28, 2005

*Frank H. Morgan (White & Case)*, Washington, D.C., for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; Jeanne E. Davidson, Assistant Director, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; *Cheryl L. Evans*, Trial Attorney, U. S. Department of Justice, Civil Division, Commercial Litigation Branch; *Peter Nessen*, Of Counsel, Office of Solicitor, U.S. Department of Labor, for Defendant.

## OPINION

**CARMAN, JUDGE:** This matter comes before this Court on Plaintiffs' Motion for Judgment upon an Agency Record pursuant to USCIT Rule 56.1 ("Plaintiffs' 56.1 Motion"). Plaintiffs challenge the United States Department of Labor's ("Labor" or "Defendant") determination regarding the agency's denial of Plaintiffs' claim for trade adjustment assistance under the Trade Act of 1974 ("Trade Act"), 19 U.S.C. §§ 2291-2298 (2000). Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance ("Initial Results"), 68 Fed. Reg. 43,372 (Dep't Labor July 22, 2003). After voluntary remand, Labor upheld its initial decision. Merrill Corporation, St. Paul, MN; Notice of Negative Determination on Reconsideration on Remand ("Remand Results"), 69 Fed. Reg. 20,645 (Dep't Labor Apr. 16, 2004). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(d) (2000).

As set forth below, this Court holds that the Remand Results are not supported by substantial evidence. Accordingly, this matter is **REMANDED** to Labor for further investigation consistent with the specific instructions contained herein.

## BACKGROUND

Plaintiffs were employed by Merrill Corporation ("Merrill"). (Former Employees of Merrill Corp.'s Mem. of P. & A. in Supp. of a USCIT R. 56.1 Mot. for J. upon an Agency Rec. ("Pls.' 56.1 Mot.") at 1.) As a result of market and technology changes, in June 2003, Merrill announced the elimination of certain positions at its St. Paul, Minnesota, and Boston/Woburn

operations.  (AR at 3.)  The eliminated employees worked as typesetters, proofreaders, and conversion specialists.  (Pls.' 56.1 Mot. at 3.)

> Merrill Corporation is a communications and document services company providing printing[,] photocopying and document management services to the financial, legal and corporate markets.  Merrill's services integrate traditional composition, imaging and printing services with online document management and distribution technology for the preparation and distribution of business-to-business communication material.

(AR at 12.)  Merrill is organized in four business groups: Financial Document Services (FDS), Document Management Services (DMS), Strategic Communication Services (SCS), and Print and Operations Group.  (Pls.' 56.1 Mot. at 2.)  Among the documents that Merrill provides its clients are "SEC compliance documents, annual reports and other financial documents, and promotional materials."  (AR at 13.)

Plaintiffs were part of the FDS group.  (Pls.' 56.1 Mot. at 2.)  Plaintiffs' application for TAA stated that the separated employees produced "typeset and html [sic] financial, corporate & legal documents for printing and filing with the SEC."  (AR at 2.)  Typesetters at Merrill received faxed, electronic, and hard copy documents from Merrill's Customer Service group.  (Suppl. AR at 10.)  The typesetters then typed, edited, and formatted documents to meet customer and SEC specifications.  (Suppl. AR at 10.)  Proofreaders audited documents for accuracy.  (Suppl. AR at 10.)  Once the documents were finalized, Merrill filed them with the SEC.  (Suppl. AR at 10.)  Merrill provided printed copies of SEC filings at the customer's request.  (Suppl. AR at 10.)  Merrill's Customer Service group arranged for document printing.  (Suppl. AR at 10.)

On June 10, 2003, Plaintiffs filed for Trade Adjustment Assistance ("TAA").

Investigations Regarding Certifications of Eligibility To Apply for Worker Adjustment

Assistance, 68 Fed. Reg. 41,182, 41,183 (July 10, 2003). Labor issued a negative determination

for worker adjustment assistance after finding that Plaintiffs' former employer did not produce an

"article" as required for certification under the Trade Act. Initial Results, 68 Fed. Reg. at

43,372-73.

On September 9, 2003, Plaintiffs requested judicial review from this Court of Labor's

negative determination. (Suppl. AR at 1.) This Court granted Defendant's motion for voluntary

remand for further investigation. Former Employees of Merrill Corp. v. U. S. Dep't of Labor, 28

CIT __, Slip. Op. 04-02 (Jan. 4, 2004). In its remand notice, Labor affirmed its original

determination, denying Plaintiffs' request for certification for TAA because the items produced

by Merrill "have no commercial value and the company is a service provider . . . ." Remand

Results, 69 Fed. Reg. 20,645. Plaintiffs' objected to the Remand Results and filed Plaintiffs'

56.1 Motion. Plaintiffs' 56.1 Motion is fully briefed, and the case is now ready for this Court's

determination.


### PARTIES' CONTENTIONS

I.        Plaintiffs' Contentions

Firstly, Plaintiffs contend that the Labor concluded that Merrill was a service provider

after an inadequate investigation. (Pls.' 56.1 Mot. at 4.) Plaintiffs charge that Labor ignored

Merrill's statements that it produced printed materials. (Pls.' 56.1 Mot. at 4.) Plaintiffs also

argue that Merrill considers itself a manufacturer rather than a service provider. (Pls.' 56.1 Mot.

at 4.)

Secondly, Plaintiffs allege that Labor applied an incorrect standard in determining that Merrill did not produce an article for purposes of the Trade Act. (Pls.' 56.1 Mot. at 4.) Plaintiffs stated that there is no basis in law, statute, or legislative history for Labor's position that because the documents Merrill produced had no commercial value they were not articles under the Trade Act. (Pls.' 56.1 Mot at 4-5.)

Thirdly, application of existing case law to the facts of this case makes clear that Merrill produces an article for purposes of the Trade Act. (Pls.' 56.1 Mot. at 5.) The documents that Merrill produces are "tangible commodities" and "new and different articles." (Pls.' 56.1 Mot. at 5.) As such, the displaced workers produced an "article" as the term is contemplated in the Trade Act. (Pls.' 56.1 Mot. at 5.)

## II.     Defendant's Contentions

Labor argues that the Court should sustain the remand results because they are in accordance with the law and supported by substantial evidence. (Def.'s Mem. in Opp'n to Pls.' Mem. of P. & A. in Supp. of USCIT R. 56.1 Mot. for J. upon the Agency R. ("Def.'s Resp.") at 6.) Labor asserts that a threshold requirement of the Trade Act is that the company from which the affected workers were separated produce an "article." (Def.'s Resp. at 7.) From the information Labor compiled during its investigation, it concluded that the documents Merrill produces are "not commercially marketable and are not sold or marketed individually or as a component to an article as required by the Trade Act" and that "Merrill is a service provider." (Def.'s Resp. at 8.) Labor notes that there is no dispute between the parties about"what product petitioners created." (Def.'s Resp. at 8.) According to Labor, "the only issue before the Court is

whether Labor properly applied the law in concluding that Merrill did not create an 'article' . . .

." (Def.'s Resp. at 8.)

## STANDARD OF REVIEW

This Court has exclusive jurisdiction to review final determinations by Labor "with

respect to the eligibility of workers for" TAA. 28 U.S.C. § 1581(d)(1) (2000). The Trade Act

also provides for judicial review of Labor's eligibility determinations. 19 U.S.C. § 2395(a)

(West Supp. 2005).[1] Such review is based upon the administrative record before the Court.

Former Employees of Rohm & Haas Co. v. Chao, 246 F. Supp. 2d 1339, 1346 (2003); 28 U.S.C.

§ 2640(c).

In reviewing Labor's determinations, findings of fact are conclusive "if supported by

substantial evidence." 19 U.S.C. § 2395(b) (2000). "Substantial evidence" must be sufficient to

reasonably support the agency's conclusion and must be more than a "mere scintilla." Ceramica

Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961 (1986), aff'd, 810 F.2d

1137 (Fed. Cir. 1987); see also Former Employees of Swiss Industrial Abrasives v. United

States, 17 CIT 945, 947, 830 F. Supp. 637 (1993). However, the statute is silent with regard to

this Court's review of Labor's determinations of law. See Former Employees of Murray Eng'g,

---

[1] 19 U.S.C. § 2395 states that

A worker, group of workers, . . . aggrieved by a final determination of the Secretary of Labor under section 2273 of this title . . . may, within sixty days after notice of such determination, commence a civil action in the United States Court of International Trade for review of such determination.

Inc. v. Chao, 346 F. Supp. 2d 1279, 1282 (CIT 2004) ("Murray I"); Former Employees of Murray Eng'g, Inc. v. Chao, 358 F. Supp. 2d 1269, 1271 (CIT 2004) ("Murray II").

Absent instructive language in the applicable statute concerning judicial review, courts may look to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (2000), for guidance. Murray II, 358 F. Supp. 2d at 1271. The APA provides for judicial review of agency decisions, 5 U.S.C. § 702, provided the statutes do not preclude such, 5 U.S.C. § 701(a). Reviewing courts are instructed by the APA to "set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(a). Thus, "'the rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis.'" Former Employees of Gen. Elec. Corp. v. U.S. Dep't of Labor, 14 CIT 608, 611 (1990) (quoting Int'l Union v. Marshall, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978)).

For "good cause shown," this Court may remand a case to Labor for further investigation and findings. 19 U.S.C. § 2395(b). "Good cause" is present when Labor's methodology is so marred that its "finding is arbitrary or of such nature that it could not be based on 'substantial evidence.'" Cherlin v. Donovan, 7 CIT 158, 162, 585 F. Supp. 644 (1984) (quoting United Glass & Ceramic Workers of N. Am., AFL-CIO v. Marshall, 584 F.2d 398, 405 (D.C. Cir. 1978).

## DISCUSSION

The Trade Act provides assistance to workers who were displaced from their jobs due to increases in "imports of articles like or directly competitive with articles produced by" the

displaced workers or due to a shift of production outside the United States. 19 U.S.C.A. § 2272(a) (West Supp. 2005). Displaced workers will qualify for assistance if they satisfy one of the two methods set forth in the Trade Act. The first method applies to circumstances where there has been a decrease in sales or production at the company from which the workers were separated. To be eligible for assistance the workers must prove that

(1)           [A] significant number or proportion of workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and

(2)(A)(i)     [T]he sales or production, or both, of such firm or subdivision have decreased absolutely;

(ii)         [I]mports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and

(iii)       [T]he increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision.

19 U.S.C. § 2272(a). The second method applies when there has been a shift in production. To be eligible for assistance under the second method the workers must prove that

(1)           [A] significant number or proportion of workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and

(2)(B)(i)     [T]here has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and

(ii)(I)       [T]he country to which the workers' firm has shifted production of the articles is a party to a free trade agreement with the United States;

(II)        [T]he country to which the workers' firm has shifted production of the articles is a beneficiary country under the Andean Trade Preference Act, African Growth and Opportunity Act, or the Caribbean Basin Economic Recovery Act; or

(III)          [T]here has been or is likely to be an increase in imports of articles
               that are like or directly competitive with articles which are or were
               produced by such firm or subdivision.

19 U.S.C. § 2272(a). The workers must satisfy each of the statutory requirements of the

respective method to be eligible for TAA. Former Employees of Shaw Pipe v. U. S. Sec'y of

Labor, 21 CIT 1282, 1285, 988 F. Supp. 588 (1997).

Due to their remedial nature, the TAA provisions of the Trade Act are construed liberally

to effectuate legislative intent. Pemberton v. Marshall, 639 F.2d 798, 800 (D.C. Cir. 1981);

Woodrum v. Donovan, 5 CIT 191, 198, 564 F. Supp. 826 (1983); Former Employees of Elec.

Data Sys. Corp. v. U. S. Sec'y of Labor, 350 F. Supp. 2d 1282, 1290 (CIT 2004) ("EDS").

However, there are limitations to how far assistance extends. For instance, services are not

covered by the Trade Act. Pemberton, 639 F.2d at 800; see also Fortin v. Marshall, 608 F.2d 525,

528 (1st Cir. 1979); Nagy v. Donovan, 6 CIT 141, 144, 571 F. Supp. 1261 (1983). To be eligible

for assistance, the separated workers must have worked for a company that produced an article.

Pemberton, 639 F.2d at 800; 19 U.S.C. § 2272(a). However, the Court disagrees with Labor's

legal conclusion in the manner it defined "article" in this case. For the reasons that follow, this

case is remanded to Labor for further investigation consistent with this opinion.

I.      Labor Incorrectly Defined "Article" for Purposes of TAA Eligibility.

        A.      Printed Matter is an "Article" for Purposes of the Trade Act.

"[T]he definition of the statutory term 'article' is a question of law." EDS, 350 F. Supp.

2d at 1291. Whether particular items produced by separated workers are covered by the

definition of "article" is a question of fact for Labor to determine. Id.

This Court and predecessor courts that have reviewed TAA determinations have created a long history in defining "article." The <u>Fortin</u> court stated that "[w]hen read in the context of the entire Trade Act [], it becomes clear that the term 'article' was plainly meant to refer to a tangible thing. . . ." 608 F.2d at 527. In reviewing the Trade Act, the court stated that throughout it an "article" is referred to as something subject to duty and in one section as "something that can be placed in a warehouse." <u>Id.</u>

In <u>Pemberton</u>, the court suggested that creation of something new entering the stream of commerce would satisfy the definition of "article." 639 F.2d at 800. The court also indicated that "article" embodied the concept of transformation and that it was something more that a "mere refurbishing of what already existed." <u>Id.</u>

The <u>Nagy</u> court, 6 CIT at 144, adopted the "tangible thing" definition set forth in <u>Fortin</u> and enunciated the rule that in the context of TAA eligibility cases the term "article" "does not embrace activity by a worker that does not result in the creation or manufacture of a tangible commodity, or that does not cause the transformation of an existing product into a new and different article," <u>Id.</u> at 145.

In a more recent decision, this Court further explained the concept of transformation. If the product at issue is simple, minor changes might reasonably result in transformation to a new and different article. <u>Shaw Pipe</u>, 21 CIT at 1287. However, the converse is not necessarily true; minor alterations or repairs to a complex product are not likely to effect a transformation of the product at issue. <u>Id.</u>

In addition to transformation and tangibility, the Court has also accepted the dutiability concept suggested in <u>Fortin</u> as a way to define "article" under the Trade Act. In fact, this Court

recently recognized that "Labor's regulation indicates that Labor chose to reference the [Harmonized Tariff Schedule of the United States ("HTSUS")] in deciding what constitutes an article as a matter of law." EDS, 350 F. Supp. 2d at 1288. Labor's regulations for Certification of Eligibility to Apply for Worker Adjustment Assistance state that "[i]f available, the petition [] should include . . . the United States tariff provision under which the imported articles are classified." 29 C.F.R. § 90.11(c)(7). The court further stated that "recourse to the HTSUS is indeed sanctioned by the language of the [Trade] Act, which consistently refers to 'an article' as a dutiable item." EDS, 350 F. Supp. 2d at 1287; see also Murray II, 358 F. Supp. 2d at 1272 n.7 ("[T]he language of the [Trade] Act clearly indicates that the HTSUS governs the definition of articles, as it repeatedly refers to 'articles' as items subject to duty.").

In Murray II, Labor's investigation revealed that the employer's designs were written to CD-ROM and most were also provided in print. 358 F. Supp. 2d at 1272. The court held that – because the designs were classifiable in the HTSUS (in heading 4911 for the printed designs and heading 8524 for the designs written to CD-ROM) – the items at issue were "articles" for purposes of the Trade Act. Id. at n.7. The court noted that saving data to a blank CD-ROM works a tariff shift and produces a new article for purposes of the HTSUS. Id. Similarly, printing to blank paper also creates "a new and distinct article under the [Trade] Act." Id. at 1273 n.7. See also, EDS, 350 F. Supp. 2d at 1288, 1292 ("software or a computer program on a carrier medium is dutiable merchandise" and printed material is classifiable in Chapter 49 of the HTSUS).

It is clear from the discussion of the cases cited herein that if an item is included within the HTSUS that it is also an "article" for purposes of the Trade Act.[2] See, e.g., Murray I, 346 F. Supp. 2d at 1284; Murray II, 358 F. Supp. 2d at 1273-74 n.7; EDS, 350 F. Supp. 2d at 1288. The administrative record reveals that Merrill prints and photocopies financial, corporate, and legal documents (AR at 2, 12, 13) and prepares business-to-business communication materials (AR at 12). The printed documents include "SEC compliance documents, annual reports and other financial documents, and promotional materials." (AR at 13.) In its negative determination, Labor acknowledged Merrill's printing and photocopying activities. (AR at 17.) Printed matter (i.e., SEC compliance documents, annual reports, prospectuses, proxy statements) is classifiable in Chapter 49 of the HTSUS[3]. Accordingly, this Court finds that the Merrill produced an article for purposes of the Trade Act.

B.     Commercial Value Is Not Relevant to Determining Whether an Item Is an "Article."

At no point has commercial value been an accepted standard for judging what is an "article" for purposes of the Trade Act. Although Labor stated that "[a]n 'article' . . . is a tangible item of value which is marketable, fungible, and interchangeable for commercial purposes" (Def.'s Resp. at 12), Labor cited no authority for its proposition. On the other hand,

---

[2]The HTSUS may not provide the only basis upon which to determine whether an item is an "article" within the purview of the Trade Act. It is not now before this Court, nor will this Court pass judgment on, whether an item not found in the HTSUS may be an "article" for purposes of the Trade Act.

[3]Chapter 49 of the HTSUS covers "[p]rinted books, newspapers, pictures and other products of the printing industry; manuscripts, typescripts and plans."

this Court agrees with Labor that an "'article' must be capable of being measured or compared with other items." (Def.'s Resp. at 12.) The HTSUS provides a ready means of accomplishing such comparison. If the item produced by the employer in question is classifiable in the HTSUS, Labor can readily compare the item to those imported under the same tariff classification. Labor provided no rationale for why such a comparison is not possible, feasible, or otherwise inadequate.

In its response brief, Labor seemed to confuse issues. Labor correctly noted that it need not analyze the other statutory requirements if Plaintiffs failed to produce an "article." (Def.'s Resp. at 12.) However, Labor then cited cases discussing whether products are "like or directly competitive." (Def.'s Resp. at 13-15.) However, the administrative record does not reflect that Labor reached the "like or directly competitive" issue presumably because Labor did not find that Plaintiffs produced an article. The "like or directly competitive" issue would logically only be considered by Labor after the agency determined that Plaintiffs produced an article. See Shaw Pipe, 21 CIT 1282 (finding first that the plaintiffs produced an article under the Trade Act and then finding that plaintiffs were not separated due to increases in imports of like or directly competitive articles). Because Labor did not find that Plaintiffs' produced an "article," whether there are "like or directly competitive" articles is not before this Court. Thus, the "like or directly competitive" discussion in Labor's response brief is inapposite to the matter before the Court.

The Court's holding herein is consistent with the legislative intent behind the Trade Act. One purpose of the Trade Act is "to provide adequate procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist industries, firm [sic],

workers, and communities to adjust to changes in international trade flows." 19 U.S.C. §

2102(4); see also Fortin, 608 F.2d at 525. Therefore, Labor is obligated to assess whether

"changes in international trade flows" may be responsible for Plaintiffs' separation from Merrill,

which is a task that Labor did not undertake. That the items Plaintiffs' produce may have not

commercial value does not relieve Labor of its obligation, nor has Labor indicated why available

means of comparison are inadequate.


        C.        The Designation of Merrill as a Service Provider is Not Relevant to Determining
                        Whether an Item Is an "Article."

As justification for determining that Merrill does not produce an article, Labor stated that

Merrill is a service provider. Labor listed Merrill's Standard Industrial Classification Code

("SIC") as 7334, for services. (Def.'s Resp. at 23.) However, the SIC has no bearing on whether

a company produces an "article." See Murray I, 346 F. Supp. 2d at 1289.

In Murray II, the court addressed Labor's use of sources that categorized industries as

either service or manufacturing. 358 F. Supp. 2d at 1273 n.8. The court stated that "[t]hese

sources, however, are not relevant to understanding the way the term 'article' is defined under the

[Trade] Act." Id. Sources such as the SIC "do not speak to the definition of the word 'article' as

used in the [Trade] Act, but rather to the categorization of industries for entirely other purposes."

Id. The court concluded that the Trade Act "requires only that the object made be within the

embrace of the HTSUS." Id. This Court agrees.

Certainly, the Trade Act does not extend eligibility for TAA to services. See, e.g.,

Pemberton, 639 F.2d at 800; Woodrum, 5 CIT at 194; Fortin, 608 F.2d at 528. However, the

Trade Act does not limit eligibility to only those "articles" produced by manufacturing facilities. Rather, the Trade Act embraces all "articles" regardless of the source of production. If another purpose is to be drawn from the Trade Act, it is incumbent upon Congress to revise the language of the statute. This Court cannot read into the statute a limitation that does not exist.

As Labor correctly noted, "what is relevant is whether the workers' firm . . . produces an article." (Def.'s Resp. at 24 (citing Former Employees of Pittsburgh Logistics Sys., Inc. v. U. S. Sec'y of Labor, Slip Op. 03-111, 2003 WL 22020510, *4 (CIT Aug. 28, 2003)).) This Court holds that printed matter is an "article" for purposes of the Trade Act. The SIC code Labor deemed applicable to Merrill's business is irrelevant to the Court's decision in this matter.

II.     Labor's Factual Determinations Are Not Supported by Substantial Evidence.

While Labor has wide latitude in conducting its investigations, it must make a reasonable inquiry. EDS, 350 F. Supp. 2d at 1291; Former Employees of Sun Apparel of Tex. v. U. S. Sec'y of Labor, Slip Op. 04-106, 2005 Ct. Int'l Trade LEXIS 105, *22-23 (CIT Aug. 20, 2004). If Labor fails to undertake a reasonable inquiry, the investigation cannot be sustained upon substantial evidence before the Court. Sun Apparel, 2004 Ct. Int'l Trade LEXIS 105, at *23. Further, this Court owes Labor no deference if its investigation was inadequate. EDS, 350 F. Supp. 2d at 1291; Former Employees of Hawkins Oil & Gas, Inc. v. U. S. Sec'y of Labor, 17 CIT 126, 130, 814 F. Supp. 1111 (1993).

Labor admitted that it had not determined in its investigation how many or what percentage of the SEC filings that Merrill produced resulted in printed copies. (Def.'s Resp. at 17 ("it is not clear whether all or most SEC filings would properly be deemed 'tangible' since

many, if not most, are filed electronically").)  This admission alone makes clear that Labor's determination that Plaintiffs did not produce an article is not supported by substantial evidence. Labor failed to undertake even a minimal investigation of Merrill's production of printed matter. The administrative record is devoid of any information concerning the percentage of – for instance – SEC filings that resulted in a printed document or the number of annual reports, prospectuses, and other documents that the Merrill printed.

Although both the Plaintiffs and their employer described articles Merrill produced, Labor based its determination that Plaintiffs were ineligible for TAA upon the nature of the work performed (i.e., service) and the lack of commercial value of the products produced.  Labor's two brief questionnaires to Merrill together with Plaintiffs' refutations and explanations thereof are insufficient to support Labor's negative determination.  See EDS, 350 F. Supp. 2d at 1292-93. This Court finds that the administrative record lacks substantial evidence upon which to affirm Labor's decision.  Therefore, this case must be remanded to Labor for further investigation.

CONCLUSION

Because Labor did not conduct an investigation into whether an increase in imported articles or a shift in production contributed importantly to Plaintiffs' separation, this Court remands to Labor for further investigation consistent with this opinion. At a minimum, Labor must determine whether (1) Plaintiffs were engaged in "production" of printed matter or other articles; (2) the volume of articles produced by Plaintiffs; (3) Merrill's customers contracted for the production of printed matter; (4) sales or production (or both) have decreased; (5) there has been or is likely to be an increase in imports of articles like or directly competitive with Merrill's articles; (6) any increase in imports contributed importantly to Plaintiffs' separation from Merrill and to its decline in sales or production; and (7) there was shift in production to a foreign country of articles like or directly competitive with Merrill's articles, and if so, to what country. With respect to each finding, the Court directs Labor to explain its determination and refer to the relevant document(s) in the administrative record. Labor's remand results together with any supplemental administrative record are due on or before October 3, 2005. Plaintiffs' comments thereon are due on or before November 2, 2005. Labor's reply is due on or before November 16, 2005.

/s/    Gregory W. Carman
Gregory W. Carman

Dated: July 28, 2005

New York, New York