SLIP OP. 08-84

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| FORMER EMPLOYEES OF MORTGAGE GUARANTY INSURANCE CORPORATION, | : : : | |
| | : | Before: Jane A. Restani, Chief Judge |
| Plaintiff, | : | |
| | : | Court No. 07-00182 |
| v. | : | |
| | : | |
| UNITED STATES SECRETARY OF LABOR, | : | |
| | : | |
| Defendant. | : | |
| | : | |

OPINION

[Plaintiff's motion for judgment on the agency record denied.]

Dated: August 13, 2008

Former Employees of Mortgage Guaranty Insurance Corporation (Loren E. Schoenstein) for the plaintiff.

Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Dawn S. Conrad); Vincent Costantino, Office of the Solicitor, U.S. Department of Labor, of counsel, for the defendant.

Restani, Chief Judge:  Plaintiffs Former Employees ("Plaintiffs") of Mortgage Guaranty Insurance Corporation ("MGIC") challenge defendant United States Secretary of Labor's ("Labor") denial of certification of Plaintiffs' eligibility to apply for trade adjustment assistance ("TAA") or alternative trade adjustment assistance ("ATAA") pursuant to the Trade Act of 1974, 19 U.S.C.A. § 2272 (West 2004) ("Trade Act").  See Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and Alternative Trade Adjustment Assistance, 72 Fed. Reg. 26,423 (Dep't of Labor May 9, 2007) ("Negative

Determination"); Mortgage Guaranty Insurance Corporation, Concord, California, 72 Fed. Reg.

61,686 (Dep't of Labor Oct. 31, 2007) (notice of negative determination on remand) ("Remand

Determination").[1]  Plaintiffs, former data entry and validation employees at MGIC, challenge

Labor's determination that they are not eligible for adjustment assistance based on a shift of

production abroad because MGIC, a mortgage insurance provider, or its relevant subdivision, did

not produce an "article" within the meaning of the eligibility requirements set forth by the Trade

Act.[2]  See Remand Determination, 72 Fed. Reg. at 61,686, 61,688.  The court has exclusive

---

[1]After Plaintiffs sought review of the Negative Determination, the court granted a consent motion for voluntary remand for further investigation and redetermination.  (See Order (Aug. 10, 2007).)  The Remand Determination affirmed the Negative Determination and set forth Labor's specific findings with respect to MGIC.  See Remand Determination, 78 Fed. Reg. at 61,686, 61,689.

[2]To be eligible for assistance based on a shift of production abroad, Plaintiffs must show that:

(1) [A] significant number or proportion of the workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and . . .

(2)(B)(i) there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and

(ii)(I) the country to which the workers' firm has shifted production of the articles is a party to a free trade agreement with the United States;
(II) the country to which the workers' firm has shifted production of the articles is a beneficiary country under the Andean Trade Preference Act, African Growth and Opportunity Act, or the Caribbean Basin Economic Recovery Act; or
(III) there has been or is likely to be an increase in imports of articles that are like or directly competitive with articles which are or were produced by such firm or subdivision.

19 U.S.C.A. § 2272(a).

jurisdiction to review TAA and ATAA eligibility determinations by Labor, 28 U.S.C.A.

§ 1581(d)(1) (West 2004), which must be supported by substantial evidence and otherwise in

accordance with law.  19 U.S.C.A. § 2395(b) (West 2004); see also Former Employees of

Murray Eng'g, Inc. v. Chao, 346 F. Supp. 2d 1279, 1282 (CIT 2004) ("Murray I").

        The Trade Act provides assistance to workers who have been displaced from their

jobs due to "a shift in production by such workers' firm or subdivision to a foreign country of

articles like or directly competitive with articles which are produced by such firm or

subdivision."  19 U.S.C.A. § 2272(a)(2)(B)(i).  To be deemed eligible, Plaintiffs must therefore

have worked for a company or subdivision "that produced an article."  Former Employees of

Merrill Corp. v. United States, 387 F. Supp. 2d 1336, 1342 (CIT 2005) ("Merrill") (citing

Pemberton v. Marshall, 639 F.2d 798, 800 (D.C. Cir. 1981)).  Although the Trade Act does not

define the term "article," it "clearly indicates that the [Harmonized Tariff Schedule of the United

States ("HTSUS")] governs the definition of articles, as it repeatedly refers to 'articles' as items

subject to a duty."  Former Employees of Murray Eng'g v. Chao, 358 F. Supp. 2d 1269, 1272 n.7

(CIT 2004) ("Murray II") (citing 19 U.S.C. §§ 2119, 2252(d)(4)(B)–(C)).  Accordingly, "if an

item is included within the HTSUS[,] . . . it is also an 'article' for purposes of the Trade Act."

Merrill, 387 F. Supp. 2d at 1343.  "[S]ervices are not covered by the Trade Act."  Id. at 1342.

        Plaintiffs argue that they supported the domestic production of an article because

the MGIC processing center where they were employed issued Notices of Loan Approval

("NOLA") in conjunction with the processing and approval of mortgage loan applications.  The

parties agree that a NOLA is a short electronic or printed form, which reflects MGIC's decision

regarding loan approval and is required for the completion of a loan package.  See, e.g., Remand

Determination, 78 Fed. Reg. at 61,687; (Sample NOLA, available at Confidential SAR 4–5).

Labor asserts that a NOLA is not an article under the HTSUS or Trade Act because "[i]t is

merely a piece of paper indicating that . . . a specific loan meets the designated underwriting

requirements."  Remand Determination, 78 Fed. Reg. at 61,687 (quotations omitted).

Chapter 49 of the HTSUS covers "[p]rinted books, newspapers, pictures and other

products of the printing industry; manuscripts, typescripts and plans."  Ch. 49, HTSUS.  Chapter

49 "contains numerous headings for specific types of printed matter," Murray I, 346 F. Supp. 2d

at 1284, including "[p]rinted books, brochures, [and] leaflets," "[n]ewspapers, journals and

periodicals," "[c]hildren's picture, drawing or coloring books," "[m]usic, printed or in

manuscript," "[m]aps," "[p]lans," "stamps," "[t]ransfers," "postcards," and "[c]alendars."

Headings 4901–4910, HTSUS.  Chapter 49 also contains a basket provision for "[o]ther printed

matter," heading 4911, HTSUS, such as "[t]rade advertising material," "[p]ictures, designs and

photographs," and "[i]nternational customs forms," subheadings 4911.10, 4911.91, 4911.99,

HTSUS.  Although Plaintiffs argue that a NOLA constitutes printed material, and should

therefore be considered an article under chapter 49 of the HTSUS and the Trade Act, relevant

case law indicates that not all documents capable of being printed fall within the scope of chapter

49.

Merrill held that a business subdivision employing "typesetters, proofreaders, and

conversion specialists," and "providing printing[,] photocopying and document management

services to the financial, legal and corporate markets," produced articles within the terms of

chapter 49 and the Trade Act.  Merrill, 387 F. Supp. 2d at 1339, 1344 (quotations omitted).

Merrill emphasized, however, that the company functioned as a document services company

engaged in the production of "printed matter," and that the reports, prospectuses, and promotional material produced by the subdivision were clearly classifiable under chapter 49. Id. at 1344. Similarly, Former Employees of Electronic Data Systems Corp. v. U.S. Secretary of Labor, 350 F. Supp. 2d 1282 (CIT 2004) ("EDS"), remanded a negative eligibility determination for computer programming employees in part because the company "was possibly producing printed material (such as brochures or manuals accompanying computer programs) that could fall into one of the subheadings of [chapter 49]."[3] EDS, 350 F. Supp. 2d at 1292 (emphasis added). EDS noted that not all printed documents would be considered articles, however, stating that "[i]f EDS produced documentation[,] . . . it is not a far-fetched inquiry to ascertain whether this documentation was composed of dutiable articles under the HTSUS." Id.

The instant case is distinguishable from Merrill and EDS because Plaintiffs' subdivision of MGIC was not engaged in "document services," nor were Plaintiffs' roles as data entry and loan validation employees analogous to those of typesetters, proofreaders, or software developers, as in Merrill and EDS. The record indicates that the NOLAs completed by Plaintiffs were existing forms that were filled in by the employees, and were not "printed materials" comparable to the books, brochures, and other printing industry products listed under chapter 49.

---

[3]EDS also remanded on the grounds that Labor erred in "attempt[ing] to categorize something as inclusive and general as 'information technology services,'" which "includes both tangible and intangible components." EDS, 350 F. Supp. 2d at 1288, 1288 n.7. Former Employees of Computer Sciences Corp. v. U.S. Secretary of Labor, 414 F. Supp. 2d 1334 (CIT 2006) ("Computer Sciences"), later held that certain intangible goods, including computer software transmitted electronically, may be considered articles under the Trade Act. See Computer Sciences, 414 F. Supp. 2d at 1345. Former Employees of Electronic Data Systems Corp. v. U.S. Secretary of Labor, 427 F. Supp. 2d 1359 (CIT 2006) ("EDS II"), noted that "the production of intangible articles can [still] be distinguished from the provision of services." EDS II, 427 F. Supp. 2d at 1360 (quotations omitted).

(See Sample NOLA, available at Confidential SAR 4–5.)

In addition, although Murray I indicates that printed matter similar to, but not classifiable as, items specified in headings 4901 to 4910 may be included under the basket provision of heading 4911, it does not imply that all documents capable of being printed fall within the basket provision.[4]  Murray I's holding that computer-generated engineering designs constituted articles under the HTSUS relied in part on the fact that non-computer generated "engineering plans and drawings have already been placed into the scope of chapter 49 by their inclusion in heading 4906."  Murray I, 346 F. Supp. 2d at 1284.  Murray I concluded that "the logical implication is [therefore] that heading 4911 . . . encompasses [the] computer-generated designs, at least to the extent that these are printed."[5]  Id.  Here, NOLAs are not "products of the printing industry," or similar to products listed under chapter 49, and are therefore not properly classifiable under any heading of the chapter, including the basket provision of heading 4911.  Accordingly, a NOLA is not classifiable under the HTSUS and is therefore not an "article" for

---

[4]General note 3(e)(iii) provides an exemption for "records, diagrams and other data with regard to any business, engineering or exploration operation whether on paper, cards, photographs, blueprints, tapes or other media."  General Note 3(e)(iii), HTSUS.  It is unclear, however, whether this removes any relevant business documents from the definition of "articles."  See EDS, 350 F. Supp. 2d at 1289 n.10.  Murray I also indicates that "the legislative history of general note [3(e)] specifies that it applies only to business documents created for internal use," Murray I, 346 F. Supp. 2d at 1288, although the exemption itself does not express such a requirement.  It is not clear whether a NOLA would be considered a document "created for internal use."  See id.

[5]Although the question of whether a product would have independent commercial value is not determinative of eligibility, see Merrill, 387 F. Supp. 2d at 1344, Murray I also noted that "the record suggest[ed] that [the company's] customers view[ed] themselves as purchasing a product, rather than a service," and that they "pa[id] by the design, and not by the hour."  Murray I, 346 F. Supp. 2d at 1289 n.22.

the purposes of the Trade Act.

Finally, the Trade Act does not provide for the eligibility of workers engaged in the provision of services.  Merrill, 387 F. Supp. 2d at 1342.  The production of certain items "simply incidental to a service" does not mean that "all and any workers will be able to successfully file for TAA, contrary to Congress' intentions."  Murray II, 358 F. Supp. 2d at 1273 n.7.  Here, Plaintiffs' issuance of completed NOLAs was merely incidental to their primary function of reviewing loans for approval, and therefore does not provide a basis for their eligibility for assistance under the Trade Act.

Accordingly, Plaintiffs' Motion for Judgment on the Agency Record is DENIED.


   /s/ Jane A. Restani
Jane A. Restani
Chief Judge


Dated this 13th day of August, 2008.
New York, New York.