**SLIP OP. 07-46**

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| FORMER EMPLOYEES OF<br>MERRILL CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br>Defendant. | **BEFORE: GREGORY W. CARMAN, JUDGE**<br><br>Court No. 03-00662 |

[The Department of Labor's second and third remand results are remanded for further proceedings consistent with this opinion.]

Dated: March 28, 2007

White & Case (Frank H. Morgan) for the plaintiffs.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; Patricia M. McCarthy, Assistant Director, U.S. Department of Justice Civil Division, Commercial Litigation Branch; (Cheryl L. Evans, Stephen C. Tosini), for the defendant.

## OPINION & ORDER

**CARMAN, JUDGE:** This matter comes before this Court for consideration of the second and third remand results denying Plaintiffs, the Former Employees of Merrill Corporation, certification for Trade Adjustment Assistance ("TAA"), which were issued by the United States Department of Labor ("Defendant" or "Labor"). The second remand results were published in the Federal Register on December 7, 2005. Merrill Corp., St. Paul, MN, 70 Fed. Reg. 72,857 (Dep't Labor Dec. 7, 2005) (notice of negative determination on reconsideration on remand) ("second remand results"). The third remand results were not published in the Federal Register

but were included in Labor's Second Supplemental Administrative Record.[1]  (2d Suppl. Admin.

R. at 19.)  Plaintiffs challenge Labor's determination in each remand to deny Plaintiffs' claim for

certification under the Trade Act of 1974 ("Trade Act"), 19 U.S.C. §§ 2291-2298 (2000).

Certification under the Trade Act would entitle Plaintiffs to certain benefits accorded to eligible

displaced workers.

As set forth below, this Court holds that the second and third remand results are not

supported by substantial evidence on the record.  Accordingly, this matter is **REMANDED** to

Labor for further action consistent with this opinion.

---

[1]Labor has actually filed five administrative records in this case, the labeling of which causes confusion.  On November 12, 2003, Labor filed a confidential and public "Administrative Record."  On April 5, 2004, Labor filed a confidential and public "Supplemental Administrative Record."  On February 1, 2005, Labor filed a public and confidential "Administrative Record" and a public and confidential "Supplemental Administrative Record."  The February 2005 Administrative Record and Supplemental Administrative Record appear identical to the earlier filings of the same titles, except that the Supplemental Administrative Record lacks document 6 (Notice of Negative Determination on Reconsideration on Remand) of the April 2004 filing.  On November 17, 2005, Labor filed a public and confidential "Supplemental Administrative Record."  The November 2005 Supplemental Administrative Record differs completely from the April 2004 and February 2005 Supplemental Administrative Records.  Lastly, on August 28, 2006, Labor filed the public and confidential "Second Supplemental Administrative Record."  Throughout this document, unless otherwise noted, this Court's references to the Supplemental Record are to the November 2005 Supplemental Administrative Record, and references to the Administrative Record are to the 2003 filing.

BACKGROUND

The facts of this case were set forth in Former Employees of Merrill Corp. v. United

States, 29 CIT __, 387 F. Supp. 2d 1336 (2005) ("Merrill II").[2]  This Court presumes familiarity

with that opinion but, for convenience, provides limited facts herein.

> Merrill Corporation is a communications and document services company
> providing printing[,] photocopying and document management services to the
> financial, legal and corporate markets.  Merrill's services integrate traditional
> composition, imaging and printing services with online document management
> and distribution technology for the preparation and distribution of business-to-
> business communication material.

(Confidential Admin. R. at 12.)  Among the documents that Merrill Corporation ("Merrill")

provides its clients are "SEC compliance documents, annual reports and other financial

documents, and promotional materials."  (Confidential Admin. R. at 13.)

Plaintiffs were part of Merrill's Financial Document Services (FDS) group.  Plaintiffs'

application for TAA stated that the separated employees produced "typeset and html [sic]

financial, corporate [and] legal documents for printing and filing with the [Securities and

Exchange Commission ("SEC")]."  (Admin. R. at 2.)  Typesetters at Merrill received faxed,

electronic, and hard copy documents, which they then typed, edited, and formatted to meet

customer and SEC specifications.  Once the documents were finalized, Merrill filed them

electronically with the SEC.  Merrill also provided printed copies of SEC filings at the

customer's request.

---

[2]This Court issued a remand order after Labor's consent motion for voluntary remand,
which would be denoted "Merrill I."  See Former Employees of Merrill Corp. v. United States,
Slip Op. 04-2, 2004 Ct. Intl. Trade LEXIS 2 (CIT Jan. 4, 2004).

In 2003, Merrill eliminated Plaintiffs' positions and shifted their work to a Merrill facility in India. As a result, Plaintiffs filed an application for TAA. Labor denied Plaintiffs' application after finding that Plaintiffs' former employer did not produce an "article" as required for certification under the Trade Act. Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 68 Fed. Reg. 43,372 (Dep't Labor July 22, 2003) (notice of negative determination) ("Initial Determination"). After voluntary remand, Labor upheld its Initial Determination. Merrill Corp., St. Paul, MN; Notice of Negative Determination on Reconsideration on Remand, 69 Fed. Reg. 20,645 (Dep't Labor Apr. 16, 2004) (negative remand determination). Plaintiffs then sought judicial review of Labor's negative Initial Determination.[3]

After Labor requested and was granted voluntary remand, Former Employees of Merrill Corp. v. United States, Slip Op. 04-2, 2004 Ct. Intl. Trade LEXIS 2 (CIT Jan. 4, 2004), and again determining that Plaintiffs were ineligible for TAA, in Merrill II, this Court held that printed matter is an article for purposes of the Trade Act. Merrill II, 387 F. Supp. 2d at 1344. This Court also ruled that commercial value is not an acceptable standard for determining what constitutes an "article" for purposes of the Trade Act. Id. Further, this Court rejected Labor's contention that because it classified Merrill as a service provider the former employees were thereby ineligible for assistance under the Trade Act. Id. at 1345. As this Court stated, "the Trade Act does not limit eligibility to only those 'articles' produced by manufacturing facilities."

---

[3]The Trade Act provides for judicial review of Labor's eligibility determinations. 19 U.S.C. § 2395(a) (2000). Section 2395 states that "[a] worker, group of workers, . . . aggrieved by a final determination of the Secretary of Labor under section 2273 of this title . . . may, within sixty days after notice of such determination, commence a civil action in the United States Court of International Trade for review of such determination." Id.

Id. Lastly, this Court held that Labor failed to conduct a reasonable inquiry and remanded the

case for further investigation. Id. at 1345-46. On remand, this Court directed Labor to

> determine whether (1) Plaintiffs were engaged in "production" of printed matter
> or other articles; (2) the volume of articles produced by Plaintiffs; (3) Merrill's
> customers contracted for the production of printed matter; (4) sales or production
> (or both) have decreased; (5) there has been or is likely to be an increase in
> imports of articles like or directly competitive with Merrill's articles; (6) any
> increase in imports contributed importantly to Plaintiffs' separation from Merrill
> and to its decline in sales or production; and (7) there was shift in production to a
> foreign country of articles like or directly competitive with Merrill's articles, and
> if so, to what country.

Id. at 1346.


## REMAND RESULTS & PARTIES' CONTENTIONS

### I.      Second Remand

In the second remand results, Labor defined the scope of its investigation as covering the

period from June 2002 through May 2003. Second Remand Results, 70 Fed. Reg. at 72,857.

Labor stated that

> Since no production took place at the subject facility during the relevant period,
> [Labor] investigated whether the subject workers supported production at an
> affiliated, domestic production facility during June 2002 through May 2003,
> whether sales and/or production declined at that production facility, and whether
> increased imports during the relevant period contributed importantly to those
> declines.

Id. Labor found "that production at all five printing facilities decreased during June 2002

through May 2003 from June 2001 through May 2002 levels." Id. However, Labor concluded

that Plaintiffs should not be certified for TAA benefits even though their jobs were undisputedly

sent to India. Id. Labor based its decision on the finding that Plaintiffs "created electronic

documents for printing and filing with the Securities and Exchange Commission (SEC)." Id.

Labor went on to state that it has consistently maintained that "electronic creations are not

'articles' for the purposes of the Trade Act unless they are embodied in a physical medium." Id.

As a result, Labor maintained that Plaintiffs did not produce an article as required by the Trade

Act. Id.

In addition, Labor found that "there are no articles which are 'like' or 'directly

competitive' to any single 'article' created by Merrill because each electronic file is a unique

document which is created for the sole purpose of satisfying a specific customer's particular need

at a particular point in time." Id. at 72,858. "Since there are no articles which are like or directly

competitive with those produced by the subject company," Labor concluded that "there cannot be

any imports, much less increased imports" as required by the Trade Act. Id. Labor explained

that "it is not enough for the process to be 'like or directly competitive.'" Id.

Although Labor determined that Plaintiffs "could be viewed as supporting production of

an article" (i.e., SEC filings printed in book form at the customer's request), Labor found that

"no printing was transferred to another country," and "[t]herefore, there was no shift of

production of an article." Id.


### A. Plaintiffs' Contentions

In their comments to the second remand results, Plaintiffs allege that Labor failed to

address several of the issues it was directed by this Court to examine and "has not conducted an

adequate investigation or provided a reasoned basis for its decision." (Pls.' Comments on the

Dep't. of Labor's 2d Remand Determination ("Pls.' 2d Remand Resp.") 2.) Plaintiffs argue that

Labor's conclusion that there are no "like or directly competitive" articles (id. at 7) is not supported by statute or legislative history and "irrationally discriminates between similarly situated workers" (id. at 8). Plaintiffs insist that neither the Trade Act nor its legislative history "limits adjustment assistance to workers that produce commodity (i.e., non-custom made) products." (Id. at 8.)

Plaintiffs also submit that the administrative record–although not as complete as it should be–is sufficient to establish that Plaintiffs are eligible for TAA certification. (Id. at 10.) Based upon the remand results, Plaintiffs deduce that Labor "conducted its analysis to arrive [at] a particular result." (Id. at 12.) Accordingly, Plaintiffs urge this Court "to set Labor's determination aside and order Labor to certify them as eligible for trade adjustment assistance." (Id.)

Lastly, Plaintiffs take issue with holes detected in Labor's investigation and explanation. Specifically, Plaintiffs contend that Labor failed to reconcile the agency's definition of "directly competitive" with the facts of the matter before this Court. (Id. at 13-14.) According to Plaintiffs, the electronic documents transmitted from India to the United States are in an earlier stage of processing than printed documents. (Id. at 14.) Plaintiffs claim that the imports of the electronic documents have an economic impact on them identical as though the documents had been printed. (Id.) Further, Plaintiffs complain that Labor failed to "grapple[] with whether the electronic version of the documents in question caused the decline in production at Merrill's U.S. facilities." (Id.) Plaintiffs purport that this is important because "Merrill's customers may well

have switched from purchasing printed documents produced in the U.S. to electronic documents produced in India." (Id.)[4]

#### B. Defendant's Contentions

Labor's underlying premise in the reply to the second remand results is that an article must be tangible for purposes of the Trade Act. (Def.'s Resp. to Pls.' Remand Comments ("Def.'s 2d Remand Reply") 7, 9.) Labor supports its second remand determination that Plaintiffs did not produce an article for purposes of the Trade Act by stating that "Merrill explained to Labor that it had ceased printing of [sic] financial documents at its St. Paul, Minnesota[,] facility in 2001, before the period of investigation in this case, and that Merrill had not shifted any printing duties overseas." (Id. at 3.) Based upon the foregoing, Labor presumes that Plaintiffs could not have been involved in the production of printed matter during the period of investigation. (Id. at 7.) Labor also argues that Plaintiffs' activities did not result in the "creation of a new object." (Id. at 8.)

Labor continues that even if the electronic transmissions of SEC filings and other corporate records from India to the United States could be considered articles for purposes of the Trade Act those "transmissions are not 'like or directly competitive' with electronic transmissions of different data because each transmission is unique." (Id. at 9-10.) Because "[o]ne financial report can never be substituted for another," Labor asseverates that Plaintiffs

---

[4]Plaintiffs also set forth a number of arguments concerning the definition of "article" for purposes of the Trade Act and Labor's findings thereon. (Pls.' 2d Remand Resp. 2-7.) Plaintiffs' arguments are largely mooted by Labor's third remand results. To the extent that the arguments concerning the definition of "article" are relevant, they will be addressed in the context of the third remand results.

have not met the requirement "that 'like' [articles] remain 'substantially identical in inherent or intrinsic characteristics.'" (Id. at 10 (quoting 29 C.F.R. § 90.2)[5].)

Labor concludes by stressing that this Court lacks the authority to certify Plaintiffs as eligible for TAA. (Id. at 11.)

> [N]o statute allows the Court to direct Labor to certify plaintiffs as eligible for TAA. Any order directing Labor to certify petitioners as eligible to receive TAA would violate 28 U.S.C. § 2643(c)(2). Section 2643(c)(2) expressly prohibits the Court from granting "an injunction or issu[ing] a writ of mandamus in any civil action commenced to review any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974."

(Id. at 11 (quoting 28 U.S.C. § 2643(c)(2))[6].)


## II.     Third Remand

In the third remand, this Court asked Labor to reconsider the second remand results in light of Labor's decision in Lands' End, A Subsidiary of Sears Roebuck & Co., Bus. Outfitters CAD Operations, Dodgeville, WI, 71 Fed. Reg. 18,357 (Dep't Labor Apr. 11, 2006) (notice of revised determination on remand) ("Lands' End"). Former Employees of Merrill Corp. v. United States, Slip Op. 06-72, 2006 Ct. Intl. Trade LEXIS 69 (CIT May 17, 2006) ("Merrill III"). In Lands' End, Labor acknowledged that "there are tangible and intangible articles" and that "[s]oftware and similar intangible goods that would have been considered articles . . . if embodied in a physical medium will now be considered to be articles regardless of their method of transfer." Lands' End, 71 Fed. Reg. at 18,357. Specifically, this Court ordered Labor to

---

[5]Labor did not specify from what year of the Code of Federal Regulations it quoted.

[6]Labor did not specify from what year of the United States Code it quoted.

determine whether Plaintiffs produce an "intangible article" as contemplated in <u>Lands' End</u> and to provide "a thorough and reasoned explanation" for its decision. <u>Merrill III</u>, 2006 Ct. Intl. Trade LEXIS 69, at *1-2. In compliance with this Court's order, Labor issued the third remand results on August 24, 2006. (2d Suppl. Admin. R. at 19.)

In its third remand results, Labor determined "that Merrill provides a service, incidental to which <u>Plaintiffs produce an intangible article</u>." (Third Remand Results 3 (2d Suppl. Admin. R. at 21) (emphasis added).) Labor continued that under <u>Lands' End</u> "the incidental production of an article does not change [Labor's] treatment of workers who work for a firm that produces an article incidental to providing a service." (<u>Id.</u>) Labor reiterated its policy that "workers who work for a firm that provides a service, such as sales and repair, are not eligible for TAA benefits." (<u>Id.</u>) Labor added "that an article is created incidental to the provision of [a] service does not make the service firm a production firm." (<u>Id.</u> at 4 (2d Suppl. Admin. R. at 22).)

Labor also adopted the reasoning of the second remand results:

> Even if the Plaintiffs did produce an article for purposes of the Trade Act, they would not be eligible to apply for TAA because there was neither a shift of production to a qualified country nor increased imports of articles like or directly competitive with those produced at the subject facility.

(<u>Id.</u> at 5.) Labor concluded that its revised policy as stated in <u>Lands' End</u> has no effect on Plaintiffs' claim and that Plaintiffs are not eligible for TAA.

### A. Plaintiffs' Contentions

Plaintiffs first argue that Labor's third remand determination violates this Court's prior ruling in <u>Merrill II</u>. (Pls.' Comments on the Dep't of Labor's 3d Remand Determination ("Pls.'

3d Remand Resp.") 2.)  Plaintiffs contend that Labor improperly relied upon the agency's finding

that Merrill is a service provider when assessing Plaintiffs' eligibility for TAA.  (Id.)  Plaintiffs

point out that this Court ruled in Merrill II that the designation of a company as a manufacturing

facility was not required by the Trade Act as a prerequisite to TAA eligibility.  (Id.)

Next, Plaintiffs assert that the record does not support Labor's finding that Merrill did not

generate revenue from SEC filings.  Plaintiffs point to confidential information in the record that

indicates that Merrill produced and sold "articles such as annual reports and investment

prospectuses . . . to its clients."  (Id. at 4.)

Plaintiffs also refute Labor's characterization of the court's holding in Former Employees

of Gale Group, Inc. v. U.S. Sec'y of Labor, 29 CIT __, 403 F. Supp. 2d 1299 (2005).  Plaintiffs

advance that the court in Gale Group held that the former employee plaintiffs in that case

provided a service and were, therefore, not eligible for TAA.  (Pls.' 3d Remand Resp. 5.)  Such

holding, Plaintiffs urge, is inapposite in this case, in which Labor agrees that Plaintiffs produced

an article, albeit an intangible article.  (Id.)  Plaintiffs contend that Labor's position cannot be

reconciled "with past precedent and this Court's clear reasoning."  (Id.)

Plaintiffs next take issue with Labor's analysis of "like or directly competitive" as the

terms apply in the Trade Act.  Plaintiffs submit that Labor's "position is absurd, unfounded and

writes a limitation into a remedial statute that is meant to be construed broadly."  (Id. at 6.)

Plaintiffs add that "Labor's position is flatly inconsistent with the Lands' End determination that

served as the basis for the Court's remand."  (Id.)  Plaintiffs equate the financial records

produced by Merrill with the designs of customer logos in Lands' End and argue that both are

unique.  Plaintiffs imply, therefore, that they should be found eligible for TAA just as the former

workers in <u>Lands' End</u> were.  Plaintiffs question "[w]hy Labor departed from the reasoned conclusion in <u>Lands' End</u> to its nonsensical one in this case."  (<u>Id.</u> at 7.)

Plaintiffs conclude by urging this Court to certify them as eligible for TAA.  According to Plaintiffs, further remand would be futile, and the record sufficiently establishes that they are eligible for TAA.  (<u>Id.</u> at 8-9.)

B.       <u>Defendant's Contentions</u>

In support of the third remand results, Labor states that "[w]orkers who incidentally produce intangible articles in association with the provision of a service are not eligible for TAA."  (Def.'s Response to Pls.' Remand Comments ("Def.'s 3d Remand Reply") 6.)  Labor explains that it interprets <u>Lands' End</u> as standing for the proposition that the former employer "must produce articles, and may not simply produce articles incident to the provision of a service."  (<u>Id.</u> at 7.)

Labor next repeats its argument that because the financial records on which Plaintiffs worked were unique there are no articles that are "substantially equivalent for commercial purposes."  (<u>Id.</u> at 9 (quotation and citation omitted).)  Labor reasons that Plaintiffs' situation is unlike that in <u>Lands' End</u> because the Lands' End workers "were involved in the production of clothing–a tangible article that can be worn by any person of the correct size, regardless of any embroidery, and which are 'substantially equivalent for commercial purposes.'"  (<u>Id.</u> at 9 (<u>quoting</u> 29 C.F.R. § 90.2).)

Labor concludes by reiterating that this Court lacks the authority to certify Plaintiffs as eligible for TAA.  (<u>Id.</u>)

**JURISDICTION & STANDARD OF REVIEW**

This Court has exclusive jurisdiction to review final determinations by Labor "with respect to the eligibility of workers for" TAA. 28 U.S.C. § 1581(d)(1) (2000). Such review is based upon the administrative record before the Court. Former Employees of Rohm & Haas Co. v. Chao, 27 CIT 116, 122, 246 F. Supp. 2d 1339 (2003); see also 28 U.S.C. § 2640(c) (2000).

In reviewing Labor's determinations, the agency's findings of fact are conclusive "if supported by substantial evidence." 19 U.S.C. § 2395(b) (2000). "Substantial evidence" must be sufficient to reasonably support the agency's conclusion and must be more than a "mere scintilla." Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961 (1986), aff'd, 810 F.2d 1137 (Fed. Cir. 1987) (quotation and citation omitted); accord Former Employees of Swiss Indus. Abrasives v. United States, 17 CIT 945, 947, 830 F. Supp. 637 (1993). While Labor has wide latitude in conducting its investigations, it must make a reasonable inquiry. Former Employees of Elec. Data Sys. Corp. v. U. S. Sec'y of Labor, 28 CIT __, 350 F. Supp. 2d 1282, 1291 (2004) ("EDS"); Former Employees of Sun Apparel of Tex. v. U. S. Sec'y of Labor, Slip Op. 04-106, 2004 Ct. Int'l Trade LEXIS 105, at *22-23 (CIT Aug. 20, 2004). If Labor fails to undertake a reasonable inquiry, the investigation cannot be sustained upon substantial evidence before the Court. Sun Apparel, 2004 Ct. Int'l Trade LEXIS 105, at *23. Further, this Court owes Labor no deference if its investigation was inadequate. EDS, 350 F. Supp. 2d at 1291; Former Employees of Hawkins Oil & Gas, Inc. v. U. S. Sec'y of Labor, 17 CIT 126, 130, 814 F. Supp. 1111 (1993).

Although the Trade Act delimits this Court's review of Labor's findings of fact, the statute is silent with regard to this Court's review of Labor's legal conclusions. See Former

Employees of Murray Eng'g, Inc. v. Chao, 28 CIT ___, 346 F. Supp. 2d 1279, 1282 (2004) ("Murray I"); Former Employees of Murray Eng'g, Inc. v. Chao, 28 CIT __, 358 F. Supp. 2d 1269, 1271 (2004) ("Murray II"). Absent instructive language in the applicable statute concerning judicial review, courts may look to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (2000), for guidance. Murray II, 358 F. Supp. 2d at 1271. The APA provides for judicial review of agency decisions, 5 U.S.C. § 702, provided the statutes do not preclude such, 5 U.S.C. § 701(a). Reviewing courts are instructed by the APA to "set aside agency action, findings, and conclusions found to be–(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(a). Thus, "'the rulings made on the basis of those findings [of fact must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis.'" Former Employees of Gen. Elec. Corp. v. U.S. Dep't of Labor, 14 CIT 608, 611 (1990) (quoting Int'l Union v. Marshall, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978)).

"In reviewing an agency's construction of a statute that it administers, this court addresses two questions outlined by the Supreme Court in Chevron [U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)]." U.S. Steel Group v. United States, 225 F.3d 1284, 1286 (Fed. Cir. 2000). This Court first must determine "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. If congressional intent is clear, both the courts and the agency "must give effect to the unambiguously expressed intent of Congress." Id. at 842-43 (footnote omitted); accord Household Credit Serv., Inc. v. Pfenning, 541 U.S. 232, 239 (2004).

If the statute is silent or ambiguous concerning the issue before it, the second question the court must assess is whether the agency's interpretation "is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

Id. at 843-44 (footnotes omitted).

"To survive judicial scrutiny, an agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. Rather, a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another." Koyo Seiko Co., Ltd. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (citations omitted). Nevertheless, courts are the final arbiters of statutory construction and "are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate congressional policy underlying a statute." SEC v. Sloan, 436 U.S. 103, 118 (1978) (quotation and citation omitted).

## DISCUSSION

### I.    Background of Trade Act

The Trade Act provides assistance to workers who were displaced from their jobs due to increases in "imports of articles like or directly competitive with articles produced by" the

displaced workers or due to a shift of production outside the United States. 19 U.S.C. § 2272(a)

(Supp. II 2002). Displaced workers will qualify for assistance if they satisfy one of the two

methods set forth in the Trade Act. The first method applies to circumstances where there has

been a decrease in sales or production at the company from which the workers were separated.

To be eligible for assistance the workers must prove that

| | |
|---|---|
| (1) | a significant number or proportion of workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and |
| (2)(A)(i) | the sales or production, or both, of such firm or subdivision have decreased absolutely; |
| (ii) | imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and |
| (iii) | the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision. |

Id. The second method applies when there has been a shift in production. To be eligible for

assistance under the second method the workers must prove that

| | |
|---|---|
| (1) | a significant number or proportion of workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and |
| (2)(B)(i) | there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and<br>* * * |
| (ii)(III) | there has been or is likely to be an increase in imports of articles that are like or directly competitive with articles which are or were produced by such firm or subdivision. |

Id.  The workers must satisfy each of the statutory requirements of the respective method to be eligible for TAA.  Former Employees of Shaw Pipe, Inc. v. U. S. Sec'y of Labor, 21 CIT 1282, 1285, 988 F. Supp. 588 (1997).

One purpose of the Trade Act is "to provide adequate procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist industries, firm [sic], workers, and communities to adjust to changes in international trade flows."  19 U.S.C. § 2102(4) (2000); accord Fortin v. Marshall, 608 F.2d 525, 525 (1st Cir. 1979).  Due to their remedial nature, courts liberally construe the TAA provisions of the Trade Act to effectuate legislative intent.  Pemberton v. Marshall, 639 F.2d 798, 800 (D.C. Cir. 1981); EDS, 350 F. Supp. 2d at 1290; Woodrum v. Donovan, 5 CIT 191, 198, 564 F. Supp. 826 (1983), aff'd, 737 F.2d 1575 (Fed. Cir. 1984).  However, there are limitations to how far assistance extends.  For instance, workers who provide services are not covered by the Trade Act.  Pemberton, 639 F.2d at 800; see also Fortin, 608 F.2d at 528; Nagy v. Donovan, 6 CIT 141, 144, 571 F. Supp. 1261 (1983). To be eligible for assistance, the separated workers must have engaged in the production of an article.  See 19 U.S.C. § 2272(a); Pemberton, 639 F.2d at 800.

## II.    "Article" under the Trade Act

This Court begins the substantive analysis of the issues with the following aspects of this case settled:

1.    Plaintiffs' jobs were shifted to a Merrill facility in India.  Second Remand Results, 70 Fed. Reg. at 72857.
2.    Plaintiffs participated in the production an article.  Merrill II, 387 F. Supp. 2d at 1344.

3. Commercial value is not relevant for determining whether an item is an "article" for purposes of the Trade Act.  Id.

4. The designation (i.e., manufacturing, service, etc.) of the firm for which Plaintiffs worked is not relevant to determining whether Plaintiffs participated in the production of an article for purposes of the Trade Act.[7]  Id. at 1345.

5. Lands' End announced a policy shift by Labor in that intangible goods are now considered articles "regardless of their method of transfer."  Lands' End, 71 Fed. Reg. at 18,357.

6. Plaintiffs produced an intangible article.  (Third Remand Results 3 (2d Suppl. Admin. R. at 21.)

Despite Labor's reluctant acceptance that Plaintiffs were engaged in the production an

article, the agency continues to deny Plaintiffs' request for certification for TAA.  Labor

maintains that Plaintiffs are ineligible for TAA because they were engaged in the production of

---

[7]This Court does not appreciate Labor's attempt to reargue this point in the third remand results.

> As stated in the USCIT's Gale [Group] opinion [403 F. Supp. 2d 1299], TAA is only available to workers in a firm engaged in production of an article.  One significant factor that distinguishes a production firm from a service firm is that the former operates commercially as a manufacturing firm and generates its revenue from the sale of the manufactured articles; the manufacturer is in the business of making and selling an article.  This is in contrast to a service firm that operates commercially as a service provider and generates its revenue from the provision of services.  That an article is created incidental to the provision of the service does not make the service firm a production firm.

(Third Remand Results 4 (2d Suppl. Admin. R. at 22).)
  As Labor is well-aware, this Court is not bound by Gale Group.  Moreover, nothing in the cited portion of Gale Group–or for that matter elsewhere in the opinion–stands for the proposition that "the USCIT established that workers in a service firm are not eligible to apply for benefits under the Trade Act."  (Third Remand Results 3-4 (2d Suppl. Admin. R. at 21-22) (citing Gale Group, 403 F. Supp. 2d at 1303).)  In fact, this Court does not take issue with the applicable portion of Gale in which the court states "that for TAA eligibility, Plaintiffs had to produce an article within the meaning of the statute."  Gale Group, 403 F. Supp. 2d at 1303.
  This Court settled the issue of firm designation in Merrill II.  "[T]he Trade Act does not limit eligibility to only those 'articles' produced by manufacturing facilities.  Rather, the Trade Act embraces all 'articles' regardless of the source of production."  Merrill II, 387 F. Supp. 2d at 1345 (emphasis added); see also Murray II, 358 F. Supp. 2d at 1273 n.8.  This Court stands by its ruling in Merrill II and will not address this issue anew.

an intangible–rather than tangible–article.  Labor's distinction between tangible and intangible articles appears nowhere in the Trade Act.  Accordingly, this Court must view Labor's interpretation of the Trade Act through the Chevron lens.  If congressional intent is clear, the court and the agency "must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 843.  However, if the statute is silent or leaves a gap for the agency to fill, the court must determine whether the agency's interpretation is proper.

This Court recognizes that Labor has some discretion to define "article"–a term left undefined by Congress–for purposes of the Trade Act, but that discretion must be exercised in a manner consistent with congressional policy underlying the Trade Act.  See Sloan, 436 U.S. at 118.  Although Congress did not define "article" in the context of the Trade Act, neither did it distinguish between "tangible" and "intangible" articles.  As remedial legislation, this Court liberally construes the Trade Act, Pemberton, 639 F. 2d at 800, and reviews Labor's construction of the term "article" so that it has the broadest possible meaning in order effectuate congressional intent.

The distinction between tangible and intangible articles is contrary to the purpose of the Trade Act, which is to provide assistance to workers who are displaced from their jobs due to increases in "imports of articles like or directly competitive with articles produced by" the displaced workers or due to a shift of production outside the United States.  19 U.S.C. § 2272(a) (emphasis added).  Labor's distinction between tangible and intangible articles is "inconsistent with . . . statutory mandate [and] . . . frustrate[s] congressional policy underlying [the] statute." Sloan, 436 U.S. at 118 (quotation and citation omitted).  Thus, this Court finds that Labor's distinction between tangible and intangible articles is "arbitrary" and "manifestly contrary to the

statute." Chevron, 467 U.S. at 844.  Accordingly, this Court holds that once Labor has

determined that affected workers were engaged in the production of an article, be that article

tangible or intangible, those workers have satisfied the "article" requirement of the Trade Act.

### III.    "Like" and "Directly Competitive" Articles under the Trade Act

In both the second and third remand results, Labor reasoned that even if Plaintiffs had

been engaged in the production of an article, they nonetheless would be ineligible for TAA

because there are no articles "like or directly competitive" with any Merrill-produced article.

Second Remand Results, 70 Fed. Reg. at 72,858; Third Remand Results 5 (2d Suppl. Admin. R.

at 23).  The terms "like" and "directly competitive" are not defined by the Trade Act.  By

regulation, Labor defines "like articles" as "those which are substantially identical in inherent or

intrinsic characteristics (i.e., materials from which the articles are made, appearance, quality,

texture, etc.)." 29 C.F.R. § 90.2 (2005).  Labor's regulations separately define "directly

competitive" articles, which are articles that "although not substantially identical in their inherent

or intrinsic characteristics, are substantially equivalent for commercial purposes (i.e., adapted to

the same uses and essentially interchangeable therefor)." Id. (emphasis added).  This Court finds

Labor's interpretations of "like" and "directly competitive" to be reasonable constructions of the

Trade Act.  See Former Employees of Tesco Techs., LLC v. U.S. Sec'y of Labor, Slip Op. 06-

163, 2006 Ct. Intl. Trade LEXIS 174, at *13 n.7 (CIT Nov. 9, 2006) (citing Chevron, 467 U.S. at

843).  Although "[a] great amount of deference is owed to an agency's interpretation of its own

regulations," Lee v. United States, 329 F.3d 817, 822 (Fed. Cir. 2003), this Court's review of

Labor's actions does not end here.  This Court must next assess whether Labor's application of

its own regulations is supported by substantial evidence. 19 U.S.C. § 2395(b). This Court finds

that it was not.

### A.    Unique Articles

Although Labor has established regulations for reviewing "like" or "directly competitive"

articles, the agency appears to have added a requirement not reflected in the Trade Act or Labor's

regulations: that the articles in question not be unique. According to Labor, "there are no articles

which are 'like' or 'directly competitive' to any single 'article' created by Merrill because each

electronic file is a unique document." (Third Remand Results 6 (2d Suppl. Admin. R. at 24)

(emphasis added).)[8] However, Congress did not provide that TAA benefits should only be

available to workers engaged in mass-production to the exclusion of workers whose output may

require skills, training, and expertise necessary to produce custom-made articles. Tesco Techs.,

2006 Ct. Intl. Trade LEXIS 174, at *15.

Further, Labor has previously certified displaced workers who produced unique articles.

Lands' End is a perfect example of Labor's prior treatment workers who were engaged in the

production of unique articles. In Lands' End, the displaced workers produced "digitized

embroidery designs from customers' logos." Lands' End, 71 Fed. Reg. at 18,357. As in the

present case, the designs on which the Lands' End employees worked were owned by the

customers. Id. Lands' End shifted the production of the digitized embroidery designs overseas.

---

[8]In the second remand results, Labor states that "there are no articles which are 'like' or 'directly competitive' to any single 'article' created by Merrill because each electronic file is a unique document which is created for the sole purpose of satisfying a specific customer's particular need at a particular point in time." Second Remand Results, 70 Fed. Reg. at 72,858 (emphasis added).

After the production shift, the digitized designs were returned to Lands' End electronically. Id. After voluntary reconsideration of an earlier negative determination of TAA eligibility, Labor concluded "that [Lands' End] produced an intangible article (digitized embroidery designs) that would have been considered an article if embodied in a physical medium." Id. Unlike the present matter, however, the Lands' End displaced workers were certified as eligible for TAA.

The Lands' End logos were owned by the customers; each customer's logo was unique; the Lands' End workers created electronic logos to satisfy customer need; the designs were electronically transmitted to Lands' End from abroad; and Labor deemed the digitized logos to be intangible articles. Similarly, Merrill's customers provided data from which Merrill employees created an electronic document–an intangible article–that was transmitted electronically to Merrill from its facility abroad in order to satisfy customer need. Labor does not explain its failure to treat Plaintiffs as it did the similarly-situated Lands' End workers. See SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (agency action is arbitrary when similar situations treated differently without justification).

In all functional and material respects the Merrill and Lands' End employees had the same responsibility: to convert information into a digital format for later use. It is of no matter to this Court, because it is of no matter to Labor under its revised policy, that in the case of Merrill employees the later use may be an electronic transmission of an electronic article. Labor's policy is clear: "[I]ntangible goods that would have been considered articles for the purposes of the Trade Act if embodied in a physical medium will now be considered to be articles regardless of the their method of transfer." Lands' End, 71 Fed. Reg. at 18,357. Under this policy, the

electronic financial documents Merrill produces for its customers are to be treated as articles, just as if they had been printed and bound.

This Court is "powerless to affirm the administrative action" where Labor's basis for the action is "inadequate or improper." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Labor does not explain the source of its requirement that articles be commodities (not unique) in order to be like or directly competitive. Given Labor's failure to explain its rationale for not following its own regulations in determining that Plaintiffs were unable to satisfy the requirements of the Trade Act because the articles they produced were unique, this Court holds that Labor's determination in this regard is arbitrary and capricious. See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (to be sustained on review, "agency must make findings that support its decision" and "articulate any rational connection between the facts found and the choice made"); see also Tesco Techs., 2006 Ct. Intl. Trade 174, at *17 (Labor's "'mass-production' requirement for TAA certification eligibility" found to be "not in accordance with law and contrary to" congressional intent). Accordingly, this Court holds that Labor's determination in the second and third remand results is unsupported by substantial evidence.


B.        "Like" Articles

Despite there being distinct definitions for "like" and "directly competitive" in its own regulations, Labor conflates the terms in its analysis of Merrill's operations. See Second Remand Results, 70 Fed. Reg. at 72,858 (finding that there are no like or directly competitive articles because the goods Merrill produces are unique). If the terms "like" and "directly competitive" are not synonymous, as their regulatory definitions mandate, then the single factor of uniqueness

cannot disqualify the imported electronic documents from being both "like" and "directly competitive." See Tesco Techs., 2006 Ct. Intl. Trade 174, at *21.

The legislative history of the Trade Act specifies that "'like' and 'directly competitive' . . . are not to be regarded as synonymous or explanatory of each other, but rather to distinguish between 'like' articles and articles which, although not 'like', are nevertheless 'directly competitive.'" S. Rep. No. 93-1298, at 121-22 (1974), reprinted in 1974 U.S.C.C.A.N. 7186, 7265. Congress adopted this statement in the context of section 201 safeguard investigations conducted by the International Trade Commission. Nonetheless, this Court finds the direction, within the legislative history for the same legislation (the Trade Act of 1974), to be instructive. When a term is used throughout a statute, the court "presume[s] that Congress intended that the term have the same meaning in each of the pertinent sections or subsections of the statute, and [the court] presume[s] that Congress intended that [the agency], in defining the term, would define it consistently." SKF, 263 F.3d at 1382; see also Former Employees of Elec. Data Sys. Corp. v. U.S. Sec'y of Labor, 29 CIT __, 408 F. Supp. 2d 1338, 1345 (2005) ("The same term cannot have different meanings in related statutes.").[9] Thus, Labor must undertake a reasoned

---

[9]This rule of statutory construction is not absolute.

Most words have different shades of meaning, and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute . . . . Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent. Where the subject-matter to which the words refer is not the same in the several places where they are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to meet the purposes of

analysis on remand of whether the electronic records transmitted from India are "like" articles

under the Trade Act. See Tesco Techs., 2006 Ct. Intl. Trade 174, at *22.


        C.       "Directly Competitive" Articles

To the exclusion of any other factor, Labor focused on the uniqueness of the documents

Merrill produces. As a result, this Court was not presented "a meaningful analysis of [the

articles'] 'uses' and 'commercial purposes' pursuant to 29 C.F.R. § 90.2, which in turn would

demonstrate whether [the imported electronic documents] constitute 'directly competitive'

articles." Tesco Techs., 2006 Ct. Intl. Trade 174, at *18. As in the present case, Labor denied

the plaintiffs' application for TAA certification in Tesco Technologies because the plaintiffs'

designs for machinery and tooling were "unique" and "developed to meet a specific customer's

particular need." Id. at *12 (quotation and citation omitted). In remanding the case to Labor, the

Tesco Technologies court commented:

---

> the law, to be arrived at by a consideration of the language in which those purposes are expressed, and of the circumstances under which the language was employed.
>      It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving the word the meaning which the legislature intended it should have in each instance.

Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932) (internal citations omitted). In the present matter, the parties have presented this Court with no evidence to suggest that the several uses of "like" and "directly competitive" in the Trade Act should be given different meanings or that Congress intended the terms to have different meanings when used in the several sections of the Trade Act. Nonetheless, on remand, Labor will have an opportunity to "attempt to provide a reasonable explanation for applying different definitions of the same phrase." Altx, Inc. v. United States, 25 CIT 1100, 1114 n.29, 167 F. Supp. 2d 1353 (2001).

> If Plaintiffs' designs were not "like or directly competitive" with other designs, logic dictates that GM would not have attempted to off-shore their production, since employing cheaper foreign labor instead of the Tesco employees to create the designs would not yield cost savings. . . . Likewise, if Plaintiffs' design production were immune to direct competition as Labor claims, off-shoring could not have affected Plaintiffs' jobs by reducing demand for their designs.

Id. at *18-19. The same rationale is equally compelling in this matter, and this Court adopts it entirely.

Because Labor failed to explain why the electronic financial documents imported from Merrill's facility in India are not "directly competitive" with those Plaintiffs' produced, this Court holds that Labor's determination is not supported by substantial evidence. In remanding this matter, this Court instructs Labor to consider that production in India and production by Plaintiffs need not necessarily overlap. See Elec. Data Sys. Corp., I Solutions Ctr., Fairborn, Ohio, 71 Fed. Reg. 18,355, 18,356 (Dep't Labor Apr. 11, 2006) (notice of revised determination on remand) ("[W]hile no production of wholly new software occurred in Mexico during the period under investigation, the Mexican workers were being trained in the production of new software during the relevant period and the production of such software now occurs in Mexico. Thus, a shift of new software production to Mexico was also already underway."). This Court also notes that neither "inherent or intrinsic characteristics" nor adaptability for "the same uses and essentially interchangeable," 29 C.F.R. § 90.2, indicate that commercial value is of any importance in determining whether articles are "like" or "directly competitive," respectively, for purposes of the trade act.[10] See Merrill II, 387 F. Supp. 2d at 1344. On remand, Labor must

---

[10]Likewise, the revenue generated by Merrill from the production of financial documents may not be the best source–or even a relevant source–of information for determining whether there are "like" or "directly competitive" articles. Although Labor claims that Merrill "does not generate revenue by the sale of the filings," (Third Remand Results 4 (2d Suppl. Admin. R. at

explain why "a custom-made product is not interchangeable with another for commercial

purposes." Elec. Data Sys., 408 F. Supp. 2d at 1347 (emphasis added).


IV.    **Similarly-Situated Workers**

It goes without saying that similarly-situated claimants should be treated similarly under

the law.  See, e.g., SKF, 263 F.3d at 1382 ("an agency action is arbitrary when the agency offers

insufficient reasons for treating similar situations differently" (quotation and citation omitted)).

It is not lost on this Court that Labor certified a group of workers in substantially similar

circumstances only last year, at roughly the same time this Court ordered the third remand.  Like

Plaintiffs, the workers of Capital City Press, Publication Services Division, "created documents

electronically."  Capital City Press, Inc., Publ'n Servs. Div., Barre, VT, 71 Fed. Reg. 29,981

(Dep't Labor May 24, 2006) (notice of revised determination on remand) ("Capital City").

Capital City shifted production to the Philippines and India and imported the publications in

electronic format.  Id.  On its initial review, Labor determined that the displaced Capital City

workers did not produce an article for purposes of the Trade Act because of "the electronic nature

of the publications created by the workers."  Id.  On voluntary reconsideration, Labor iterated the

---

22)), Merrill's business and Plaintiffs' work during the relevant period included more than just
producing SEC filings.  Merrill and Plaintiffs also produced other financial documents, including
prospectuses and annual reports, which are not filed and, therefore, presumptively would not
generate filing revenue for Merrill.  (See Confidential Suppl. Admin. R. at 10.)  It is reasonable
to presume that Merrill did not provide prospectuses and annual reports free-of-charge.  Labor
neither explains the relevance of Merrill's revenue stream nor the inconsistent information
provided by Merrill.  Although this Court by no means wishes to encourage Labor's focus on
revenue, if the agency persists along this vein of inquiry it might be better-served by inquiring of
Merrill's controller or chief financial officer, rather than, relying upon financial information
provided by the human resources department.  (See Confidential 2d Suppl. Admin. R. at 18.)

policy shift announced in <u>Lands' End</u>.[11]  Labor then determined that Capital City's displaced workers "engaged in activity related to the production of an article (scientific journals and books)."  <u>Id.</u>  Further, Labor concluded "that during the relevant period, a significant portion of workers was separated from [Capital City], production shifted abroad, and the subject firm increased imports of publications following the shift abroad."  <u>Id.</u>  Accordingly, Labor certified Capital City's workers because "a shift in production abroad of publications like or directly competitive to that produced at the subject facilities followed by increased imports contributed to the total or partial separation of a significant number or proportion of workers at the subject facilities."  <u>Id.</u> at 29,982.

Like Plaintiffs, the displaced Capital City employees created unique electronic documents; the Capital City employees' jobs were relocated to a production facility abroad; and the foreign facility transmitted the electronic documents to Capital City electronically.  In all relevant respects, the Capital City employees' and Plaintiffs' situations are identical.  Yet, the Capital City employees were certified by Labor as eligible for TAA and Plaintiffs were not.  Labor has failed to explain the discrepant treatment of the similarly-situated workers.

---

[11]Specifically, Labor stated that

> the Department has revised its policy to acknowledge that there are tangible and intangible articles and to clarify that the production of intangible articles can be distinguished from the provision of services.  Intangible goods that would have been considered articles, for the purposes of the Trade Act, if embodied in a physical medium are now considered to be articles regardless of their method of transfer.

<u>Capital City</u>, 71 Fed. Reg. at 29,981.

This Court anticipates that Labor might argue that <u>Capital City</u> is distinguishable from the case at bar because (1) Capital City is a production firm, and (2) Capital City's publications have commercial value. As this Court held in <u>Merrill II</u>, the firm's designation as production or service is of no import to determining eligibility for TAA. <u>Merrill II</u>, 387 F. Supp. 2d at 1345. As for the commercial value of Capital City's publications, the Court finds no merit to this argument either. The Trade Act does not require the articles at issue to have commercial value. <u>Id.</u> at 1344.

On remand, this Court directs Labor to explain its reasoning for denying Plaintiffs the TAA certification it granted to the Capital City employees.

## V.    **Plaintiffs Satisfaction of TAA Certification Requirements**

Even if Plaintiffs have satisfied all of the eligibility requirements for TAA certification under the Trade Act,[12] this Court is powerless to direct Labor to certify Plaintiffs at eligible for TAA. The Trade Act is clear. This Court may affirm Labor's determination or it may set aside Labor's determination in whole or in part, 19 U.S.C. § 2395(c), but this Court is not authorized to direct Labor to certify Plaintiffs as eligible for TAA, 28 U.S.C. § 2643(c)(2) (2000) ("The Court of International Trade may not . . . issue a writ of mandamus in any civil action

---

[12]It is apparent to this Court that Plaintiffs have satisfied the eligibility requirements of the Trade Act, 19 U.S.C. § 2272(a)(1) & (2)(B). First, Plaintiffs' jobs were eliminated. (Admin. R. at 3 (electronic message from Merrill management confirming that "a number of positions in St. Paul and boston/Woburn have been eliminated").) Second, Merrill shifted Plaintiffs' job overseas, specifically to a Merrill facility in India. <u>Second Remand Results</u>, 70 Fed. Reg. at 72,857. Third, the job and production shift resulted in an increase in imports of like or directly competitive articles, in that Merrill's domestic facilities were no longer performing the work that was, during the relevant period, being performed overseas. <u>Id.</u> ("financial reports were delivered to the United States via electronic transmission" from India).

commenced to review any final determination by the Secretary of Labor under section 223 of the Trade Act of 1974 [19 U.S.C. § 2273]").

## CONCLUSION

For the reason stated herein, this Court remands this matter to the Department of Labor for further proceedings consistent with this opinion. Labor's remand determination is due no later than April 30, 2007. Plaintiffs may file comments concerning the remand results no later than May 14, 2007.

/s/      Gregory W. Carman
Gregory W. Carman

Dated: 28 March 2007
    New York, New York

**ERRATUM**

<u>Former Employees of Merrill Corporation v. United States</u>, Court No. 03-00662, Slip Op. 07-46, dated March 28, 2007:

Page 29, the first sentence in section V should read, ". . . this Court is powerless to direct Labor to certify Plaintiffs as eligible . . . ." not "at eligible."

March 29, 2007